### FUNKE v. HURST.

INSOLVENT DEBTORS—IMPRISONMENT—DISCHARGE.

Act No. 105, Laws 1847 (2 How. Stat. chap. 309, §§ 1, 2), providing for the discharge of persons imprisoned on civil executions after they shall have been confined for a certain time, amends 2 How. Stat. chaps. 306, 307, providing that, when certain facts are found, imprisoned debtors, having nonexempt property, shall be discharged on making an assignment thereof, so that in no case can the discharge be made until the term of imprisonment prescribed by said act has expired.

*Certiorari* by Charles F. Funke to review the action of William A. Hurst, circuit court commissioner of Wayne county, in granting a discharge to one imprisoned on civil process. Submitted October 6, 1898. Order reversed January 3, 1899.

*Bowen, Douglas & Whiting,* for plaintiff.

*Sloman & Groesbeck (Emanuel T. Berger,* of counsel), for respondent.

LONG, J. *Certiorari* is brought to review the action of the respondent in granting a discharge from imprison-

ment to one David Epstein, who was confined in the
Wayne county jail at the instance of the plaintiff, under
a *capias ad satisfaciendum.* It appears that Epstein was
arrested upon a *capias ad respondendum* at the suit of
plaintiff. The affidavit upon which the *capias* issued
stated, substantially, that the plaintiff had discounted a
large number of notes for Epstein, upon his representation
that he was worth, over and above all his liabilities, the
sum of $15,000, and that he had standing in his own name
three pieces of property on Catherine street, in Detroit,
and that he had a stock of rags, metals, and rubber worth
at least $10,000; that, solely upon these representations,
plaintiff extended credit to him from time to time until the
indebtedness amounted to $18,540; that the statement that
the property stood in Epstein's name was false; and that,
after such indebtedness had been created, he gave real-
estate and chattel mortgages amounting to $5,000, covering
all the property he did actually possess, so that the plaintiff
and other creditors were unable to collect their debts from
him. Epstein was arrested upon this *capias.* He made
a motion to quash the writ. This was denied. A petition
was filed in this court for a *mandamus* to compel the court
below to quash it. That application was denied. The
cause was then tried in the court below, and plaintiff ob-
tained judgment for $19,600. A motion for new trial was
denied, and, after a *fieri facias* and an *alias fieri facias*
had been issued and returned, a *capias ad satisfaciendum*
was issued; and the sheriff, on November 6, 1897, by virtue
thereof, took Epstein into his custody, and confined him in
the Wayne county jail. On January 12, 1898, Epstein
applied to the respondent for his discharge. After a hear-
ing, the respondent made the order.

In the petition here for the writ of *certiorari*, the plain-
tiff sets out several grounds upon which it is contended
the commissioner had no power to grant the order of dis-
charge. The petition made by Epstein for his discharge
sets out his arrest upon the *capias*, the fixing the bail at
$3,000, his giving the bail, his release, the judgment of

the court in favor of plaintiff, and the issuing of the *capias ad satisfaciendum*, upon which he was arrested, and that he was then confined in the Wayne county jail. It also sets out that he was then insolvent, and without means to satisfy or pay said judgment, or any part thereof, but if allowed his liberty, and permitted to follow the business in which he had been engaged, he would be enabled to pay his debts, or a large portion thereof. The petition then prays that he "may be allowed to make an assignment of all his property, both real and personal, for the benefit of all his creditors, in accordance with chapters 306 and 307 of Howell's Annotated Statutes, and that your petitioner may obtain his discharge from imprisonment."

The commissioner returns that, upon the presentation of said petition to him, it was accompanied with a schedule containing a statement under oath of Epstein's creditors, and an inventory of his estate; that a citation was issued and served upon Epstein's creditors to appear, and on the day fixed; that he then proceeded to a hearing upon the petition, and thereupon directed an assignment by Epstein of all his estate, and on the 27th day of January, 1898, such assignment was made, in accordance with subsection 10, § 8810, and subsection 11, § 8811, 2 How. Stat., and delivered to William H. Corlett. The commissioner also returns the substance of the testimony given by the petitioner before him, and says that:

"It appeared to me from the evidence in the case, and I found from such testimony, that said Epstein did not, in contemplation of his becoming insolvent, or of his petitioning for said discharge, or knowing of his insolvency, make any assignment, sale, or transfer, either absolute or conditional, of either his real or personal estate, or of any interest therein, or confess any judgment or give any security with a view to give a preference for an antecedent debt to any creditor."

Section 8, chap. 306, provides that if the officer before whom the hearing is had shall be satisfied that such petitioner is unable to pay his debts, that his account and

inventory presented with his petition are true, that he has not been guilty of any fraud or concealment in violation of the provisions of this chapter, but has in all things conformed thereto, such officer shall direct an assignment to be made to such assignee as such officer shall appoint, of all the estate of such debtor, excepting such articles as are exempt from sale on execution. Section 9 provides for the execution and recording of such assignment. It is then provided by section 10:

"Upon producing and proving a certificate of the assignees, and of the register of deeds, as prescribed in the last preceding chapter, of the execution and recording of such assignment, and of the delivery of the property assigned, or so much as shall be capable of delivery, with the books and papers relating to the same, the officer before whom the proceedings were had shall grant a discharge under his hand and seal."

It appears by the commissioner's return that these certificates were produced and proved.

It is, however, contended by counsel for the plaintiff in *certiorari* that the commissioner was in error in discharging Epstein until he had served the term of nine months in prison, as provided by section 2, chap. 309, 2 How. Stat. (§ 8900), for the reason that the affidavit upon which the *capias ad respondendum* issued charged fraud, and that these charges were sustained on the trial in the circuit court, and judgment rendered against Epstein by reason of the fraud charged, and that he was confined in jail upon a *capias ad satisfaciendum.*

We are satisfied that the commissioner was in error in ordering the discharge. The Constitution of this State, by article 6, § 33, provides:

"No person shall be imprisoned for debt arising out of or founded on a contract, express or implied, except in cases of fraud or breach of trust, or of moneys collected by public officers or in any professional employment," etc.

Mr. Epstein was charged with fraud, and was convicted thereof in the civil action, and judgment was ren-

dered against him. The case is one in which imprison-
ment might follow the judgment. Chapters 306 and 307,
under which the action was had before the commissioner,
point out the procedure in such cases, and provide for the
discharge when certain facts are found. Facts were
found which would justify a discharge at the proper time.
These chapters were passed in 1839, and stand as chapters
143 and 144 in the Revised Statutes of 1846. At that
time neither these chapters, nor chapter 146 of the Re-
vised Statutes of 1846, provided any specific time for
which the imprisonment should continue before the appli-
cation could be made for discharge. In 1847, by Act No.
105, Laws 1847, the legislature amended chapter 146,
which stands now as chapter 309, 2 How. Stat., by provid-
ing:

"SECTION 1. Every person who shall be imprisoned
by virtue of one or more executions in civil causes may
make application for his discharge from imprisonment in
the cases and in the manner hereinafter specified.

" SEC. 2. Such application may be made at the times
following, that is to say: (1) If the amount due on such
executions shall not exceed twenty-five dollars, after he
shall have been imprisoned thirty days. * * * (5) If
the amount due on such executions shall exceed five hun-
dred dollars, after he shall have been imprisoned nine
months."

While this chapter is entitled, "Relief of Poor Debtors
from Imprisonment," the act is broad enough to include all
persons who are imprisoned on civil process. While it is
not so specified in the amendatory act, it was apparently
the intent of the legislature to so amend the various acts in
reference to the discharge of persons imprisoned on civil
process that all persons so imprisoned should be held in
prison for a time varying with the amount involved. If,
however, the persons making the application for discharge
had property, an assignment of such property must be
made, in accordance with the requirements of chapters 306
and 307, before their debts would be discharged; while, as
to poor debtors (those having no property to exceed $20,

except such as was exempt from execution), the formality of an assignment was to be dispensed with. This is the apparent meaning of these chapters, for it is provided by section 10, chap. 309, that:

"If the officer to whom any application shall be made under the provisions of this chapter, after the examination of the prisoner, shall not be satisfied that he is entitled to his discharge, such prisoner shall be remanded to prison; but he shall not thereby be prevented from obtaining his discharge upon new notice to the creditor or creditors, and new proceedings before the same or some other proper officer, in the manner herein provided."

Chapter 309 makes no reference to any notice to creditors. The notices to creditors are, however, required by chapters 306 and 307.

The amendatory act of 1847 to chapter 146, Rev. Stat. 1846, must be held to have amended chapters 143 and 144 (now chapters 306 and 307, 2 How. Stat.), in relation to the *time* when the application for discharge can be made, so that, as to debtors having some property, that property must be assigned, as provided in chapter 306, before a discharge can be had, while a poor debtor (one with nothing to assign) can take the proceedings prescribed by chapter 309; but in no case can the discharge be made until the imprisonment has continued in accordance with the provisions of section 2, chap. 309.

The order of discharge made by the commissioner must be reversed, and the prisoner remanded to custody.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. GRANT, C. J., did not sit.